This is an appeal by William L. Irons from a judgment of the Circuit Court of Randolph County, Alabama, directing the sale of real estate for a division of the proceeds. The real estate consisted of 290 acres, more or less, of lakefront property *Page 1354 
on the newly created 10,000-acre Harris Dam Lake Project located in Randolph County, Alabama, also known as "Lake Wedowee." The judgment also directed the sale of two houses in the City of Wedowee, but that portion of the judgment is not the major point at issue here.
The parties were all of the remaindermen devisees under the last will and testament of William Samuel Wright, deceased, which will was probated in the Probate Court of Randolph County, Alabama, in 1946. Mr. Wright's widow, the sole life tenant, died in 1979. The remaindermen, who were all parties in the trial court, were as follows: (1) Plaintiffs Frances W. Le Sueur and Rosalie W. Lovvorn, the two surviving daughters of William Samuel Wright, each of whom owns an undivided 1/5 interest; (2) the three children of Inez W. Trotter, a deceased daughter of William Samuel Wright, each of whom owns an undivided 1/15 interest; these three children were named as defendants; (3) the five children of Earl Wright, a deceased son of William Samuel Wright, each of whom owns an undivided 1/25 interest; these five children were defendants; and (4) the two children of Velma W. Irons, a deceased daughter of William Samuel Wright; these two children were William L. Irons (the appellant) and his brother, each of whom owns an undivided 1/10 interest and each of whom was a defendant.
The plaintiffs served on defendant William L. Irons a request for admissions which read as follows:
"Request for Admissions
 "Comes [sic] now the Plaintiffs and request that William Lee Irons, Defendant, respond to the following request for admissions: . . . (6) Can the property described in the Plaintiffs' Complaint be divided equally without a sale of said property?"
This Court questions the wisdom of the plaintiffs' making such a request for admission. Irons, using good trial strategy, filed a response to plaintiffs' request for admissions, noting therein that "although plaintiffs' counsel has incorrectly set out interrogatories, they will be treated as the `affirmative statement' since this was the apparent pleader's intent — having styled their pleading `Request for Admissions.'" In response to request number six, Irons responded: "6. Defendant admits the property described in the plaintiffs' complaint can be equitably divided." During the trial, the only evidence offered by the defendants was the request for admissions and the responses thereto.
Irons contends that this conclusively established that the lake property could be equitably divided.
Rule 36 (b), Ala.R.Civ.P, provides in pertinent part:
 "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."
There was no objection to the introduction of the request for admissions, nor was there any motion requesting permission to withdraw or amend the admission.
The question presented here is: In response to a request for admission, can the party to whom the request is directed admit a fact, even an ultimate issue, and conclusively establish the fact that is admitted, so that the party propounding the request for admissions cannot introduce evidence to contradict the fact admitted?
If the plaintiffs are to prevail, they must aver and prove that the property cannot be equitably divided or partitioned among the owners. If it is "conclusively established" that the property described in the plaintiffs' complaint can be equitably divided, then the plaintiffs cannot prevail. Plaintiffs have requested that a defendant admit a fact which will completely destroy plaintiffs' cause of action, and the defendant admits this. Clearly, the Court is faced with a situation which was never contemplated when Rule 36, Ala.R.Civ.P., was adopted; and the bar is cautioned to be more judicious in its use of that rule.
The plaintiffs' "Request for Admissions," although so styled, was open ended in form and, as such, each request was in *Page 1355 
the nature of an interrogatory. Plaintiffs' request number six allowed for a "yes" or "no" response. Irons assumed that it was intended to read: "The property described in the plaintiffs' complaint can be divided equitably without a sale of said property." It could just as easily have been assumed by Irons that it was intended to read: "The property described in the plaintiffs' complaint cannot be divided equitably without a sale of said property." In fact, the plaintiffs argue in their brief that it was their intention to elicit a "no" response to request number six for the purpose of eliminating the necessity of such proof at trial.
The purpose of Rule 36 is to expedite the trial and to relieve the parties of the cost of proving facts which will not be disputed and the truth of which can be ascertained by reasonable inquiry. Committee Comments to Rule 36, Ala.R.Civ.P. The rule was not intended to be a means of discovery. It was designed as a device by which at least some of the material, undisputed facts of a case could be established without the necessity of formal proof. When used in this manner, it serves a very useful purpose. Wright and Miller, Federal Practice andProcedure, Civil §§ 2252, 2253 (1970) (citing Champlin v.Oklahoma Furniture Manufacturing Co., 324 F.2d 74 (10th Cir. 1963).
In the present case, it is self-evident that the plaintiffs were attempting to elicit a "no" response to request number six and thereby reduce their burden of proof at trial. It was necessary for the plaintiffs to establish, as an element of their prima facie case, that the property could not be equitably divided and they introduced testimony to this end at trial. Notwithstanding the fact that the plaintiffs' "Request for Admissions" was rather inartfully drafted, the purpose of Rule 36 would not be served by allowing that rule to be used in the manner contended by Irons, that is, as a device whereby facts, obviously disputed by the party propounding the request, may be conclusively established against that party.
Therefore, we hold that Irons's response to request number six did not conclusively establish that the property could, in fact, be equitably divided. It was simply evidence to be considered by the trial court. Where a case is tried ore tenus, as here, the trial court's findings are presumed correct and its judgment or decree will be reversed only if, after consideration of all the evidence and all reasonable inferences to be drawn therefrom, the judgment or decree is found to be plainly and palpably wrong. We do not find that to be the circumstance here.
Irons next contends that the testamentary restrictions prohibited a sale for a division of the proceeds. The will of William Samuel Wright devised a life estate to his widow in his "real, personal and mixed" property. The only provision relating to the remainder interest after the widow's life estate was "after the death of my wife . . . it is my wish that my property be divided equally among my children." Irons contends that "divided equally" means partitioned in kind and that to permit the sale for division of proceeds upon petition of plaintiffs would be a forced construction, "voodoo magic," and contrary to Wright's intent.
This Court disagrees. The phrase "divided equally among" in a will devising property imports the granting of an estate in common and not a limitation upon alienability. Sturm v. Sawyer,2 Pa. Super. 254, 257 (1896); Weir v. Tate, 39 N.C. 264, 276
(1846); Griswold v. Johnson, 5 Conn. 363, 366 (1824); Emersonv. Cutler, 31 Mass. (14 Pick) 108, 114 (1833). This phrase does not import that such property must be partitioned in kind and cannot be sold for a division of proceeds in the event that the common owners cannot agree on an equitable division, or that there can be no equitable partition.
 "Partition of land between joint tenants or tenants in common is a matter of right, but the alternative right to have lands sold for division is statutory, and is conditioned upon averment and proof that the property cannot be equitably *Page 1356 
divided or partitioned among them. When this condition appears, the right to sell for division is a matter of right, but if this condition is not proven, no sale for division should be ordered."
Raper v. Belk, 276 Ala. 370, 162 So.2d 465 (1964); Ragland v.Walker, 387 So.2d 184 (Ala. 1980).
Irons next contends that the plaintiffs did not meet their burden of proof. The plaintiffs had the burden of proving that the lake property could not be partitioned in kind among the twelve owners so that two owners would each receive land having a value equal to one-fifth of the total value; so that two other owners would each receive land having a value equal to one-tenth of the total value; so that three other owners would each receive land having a value equal to one-fifteenth of the total value; and so that five other owners would each receive land having a value equal to one twenty-fifth of the total value. Cotton v. McMurtry, 440 So.2d 1039 (Ala. 1983).
The property consists of approximately 290 acres bordering a recently impounded lake. The property has a varied topography, including level land, rolling land, bluffs with banks that drop off to the water, sloughs, and land through which creeks and branches run. A paved road runs through the level portion and another paved road runs toward the bluff side. There are also some lumber roads running through the level land.
The tax assessment sheets show that part of this lake property is divided into five small irregular lots with appraised values ranging from $3,000 to $300. They further show that this property consists also of a 1.2-acre tract with an appraised value of $3,000; a 129.70-acre tract with an appraised value of $77,000, or slightly less than $600 per acre; a 90.67-acre tract with an appraised value of $85,500, or $950 per acre; and a 27-acre tract with an appraised value of a little over $1,000 an acre. Neither of the plaintiffs, who were familiar with the property and who were the only two persons to testify, thought that the property could be equitably divided in kind among the joint owners. Attempts had been made to divide this property among the owners since shortly after the life tenant died in 1979. There had been four general meetings to try to resolve this. The annual income from the property is not enough to pay the annual ad valorem taxes.
One of the defendants filed a notice of election to proceed under § 35-6-100, Code 1975, and to purchase the interest of the plaintiffs, but withdrew the notice of election prior to the appointment of an appraiser.
The trial court has heard ore tenus testimony; therefore, its judgment based upon that testimony is presumed correct and will be reversed only if after consideration of the evidence and all reasonable inferences to be drawn therefrom, the judgment is found to be plainly and palpably wrong. Thompson v. HartfordAccident and Indemnity Co., 460 So.2d 1264 (Ala. 1984); Englishv. Barnes, 387 So.2d 128 (Ala. 1980); English v. Brantley,361 So.2d 549 (Ala. 1978).
The trial court found that "said property, the subject of this action, cannot be equitably divided or partitioned among said joint owners" and that a sale for division was necessary. This Court cannot hold that this finding is plainly and palpably wrong. English v. Barnes, supra, Cotton v. McMurtry,supra.
Irons next contends that the trial court erred in not invoking the principles of owelty of partition to assure an equitable division of the lands rather than a judicial sale.Black's Law Dictionary, (5th ed. 1979), defines "owelty of partition" as follows:
 "A sum of money paid by one of two coparceners or co-tenants to the other, when a partition has been effected between them, but, the land not being susceptible of division into exactly equal shares, such payment is required to *Page 1357 
make the portions respectively assigned to them of equal value. The power to grant owelty has been exercised by the courts of equity from time immemorial."
The principles of owelty of partition are described as follows in 2 H. Tiffany, The Law of Real Property § 479 at 325 (3d ed. 1939):
 "If the property cannot be equally divided, a court of equity may equalize the shares by a decree that one taking the larger share shall pay a certain sum, called `owelty' (equality) of partition, to one receiving a less share, as a condition of carrying out the partition."
Alabama law allows "owelty." § 35-46-24, Code 1975.
Defendant William L. Irons and his brother in their answer and counterclaim requested that the trial court invoke the principle of owelty of partition. This Court has reversed a trial court's order of a sale and suggested that, even though the trial court could not fashion a remedy partitioning the property, rather than order a sale for division the court would arrive at a satisfactory remedy by invoking owelty. Franklin v.Burnett, 457 So.2d 407 (Ala. 1984). In that case, Franklin had purchased property from certain heirs of a deceased owner, but had failed to obtain conveyances from one heir who owned an undivided 9/63 interest and another who owned an undivided 1/63 interest. Franklin had sold the property. It had been subdivided into ten lots, utilities had been run to the property, a public street was being constructed through the property, and three homes, a warehouse, and an office building had been constructed on the property by various parties. The two heirs with the 10/63 interest petitioned for equitable division of the property. The trial court held that the property could not be equitably partitioned. This Court wrote: "Inasmuch as the court cannot fashion a remedy partitioning the property, we remind it that the plaintiffs in this case requested in their complaint, in addition to the partition, `such other and general relief as may seem just and equitable.' The lower court is authorized to do just that. A satisfactory remedy could include owelty or any other available equitable relief." In the case presently at issue, no improvements have been made on certain portions of the property by owners of an undivided interest in such property; in fact, there are no improvements on this lakefront property. This Court inWashington v. Phillips, 257 Ala. 625, 60 So.2d 337 (1952), held that each case involving owelty must be judged on its own merits, but that owelty should be used sparingly and with great caution. In that case, the property consisted of five and one-half acres in Tuskegee, Alabama, on which there was a house in one corner. The shares of the two owners were five-sevenths and two-sevenths respectively. This Court upheld the trial court's finding that the land could not be equitably divided in kind. The principal question argued on appeal was whether under the facts the court should have divided the property so that the respondent would have retained the house, upon the application of the doctrine of owelty. This Court held that the decree of the lower court ordering a sale of the property for division was supported by the facts in the case and that under the evidence it was the only just and equitable solution.
This Court cannot find that the trial court was plainly and palpably wrong in not invoking the doctrine of owelty in this case. Washington v. Phillips, supra.
Next, Irons attacks the trial court's judgment. The pertinent portion reads as follows: "DONE at Wedowee, Alabama, this 30th day of November 1984." This is followed by the signature of the trial judge.
The trial was on December 4, 1984. The record shows:
"Mr. Hamte: With that we rest.
 "The Court: If you want to make closing arguments, I'll be glad to hear them.
"(Closing arguments by counsel) *Page 1358 
"The Court: I'll have an order in a day or two."
The judgment was filed in the office of the clerk of court on December 7, 1984.
It is obvious that the date on the judgment was a clerical mistake. The trial was on December 4. The trial judge stated that he would have an order in a day or two following that date. The judgment was filed in the clerk's office on December 7.
Rule 60 (a), Ala.R.Civ.P., provides:
 "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal or thereafter, such mistakes may be so corrected by the trial court."
Irons contends that the judgment requires reversal for the following reasons:
(1) That the trial court failed to adjudicate thecounterclaim. The trial court did adjudicate the counterclaim. By granting the plaintiffs' petition to sell the lake property for a division of the proceeds, the trial court effectively denied the petition in the counterclaim for the lake property to be partitioned among the owners. There was no reference in the plaintiffs' complaint to the two houses in Wedowee owned by the parties as tenants in common. A question concerning them was raised in the counterclaim. The trial court ordered that these houses be sold for a division of the proceeds; therefore, the trial court did adjudicate the counterclaim.
(2) That the court ordered a private sale of houses withoutpleading. This argument is without merit. In the judgment, the court ordered that the commissioner appointed immediately offer for private sale the two houses subject to approval by the court, but ordered that if the houses were not sold in this manner by a date certain, namely, April 15, 1985, that they be sold at a public sale. The trial court had the authority to do this, under the pleadings. A trial court, under its broad powers, can order a sale of property for division of the proceeds among the joint owners either at public auction or at private sale. Copeland v. Giles, 271 Ala. 302, 123 So.2d 147
(1960).
(3) That there was no proof that a forced sale was in the"best interests" of the parties. This contention is without merit. If there is an averment and proof that tenants in common own real property and that this property cannot be equitably divided or partitioned among them, then the sale for division is a matter of right, without the necessity of also proving that it is in the best interests of the tenants in common.Ragland v. Walker, supra; Raper v. Belk, supra. Neither Irons nor any of the other defendants offered any evidence that a sale in this manner was not in the "best interests" of the tenants in common.
(4) That the lake property's legal description was defective.
This claim is without merit. The description contains the exception "less and except the land conveyed to Alabama Power Company." It would certainly assist attorneys or title companies in checking title to this property to have the recording data on this conveyance, if it is recorded, or the date of the conveyance if it is not recorded, but a failure to have it does not make the legal description defective. Potential purchasers, if unable to obtain from the Randolph County Probate Office a description of the property excepted, could obtain this from Alabama Power Company. The case ofMartin v. Carroll, 235 Ala. 30, 177 So. 144 (1937) ("50 acres in W 1/2 of NW 1/4 of Sec. 17" and "E 1/2 of NE 1/4 of Sec. 19, less 30 acres") and Welden v. Brown, 185 Ala. 171, 64 So. 430
(1914) ("225 acres lying on E 1/2 of Sec. 29, Tp. 21, R. 22, starting at the half-mile stake on the north sec. line, running *Page 1359 
due south to a made corner on the dividing line of said sec., and then running east with the cross-fence at the south to a made corner at the end of said fence, and then running south to the original line"), which are cited by Irons in support of his position, are not relevant to the case at issue.
(5) That attorney fees were taxed without proof. In the judgment, the trial court ordered that plaintiffs' attorney, who was appointed as the commissioner to sell the real property, "be paid out of the proceeds of said sale, upon confirmation, a reasonable attorney's fee as fixed by the court for his services in this action and such other attorney's fee as should be determined to be lawfully due in this case." There is an allegation in the complaint that plaintiffs had employed the services of an attorney to handle these proceedings and that his services were for the common benefit of all the parties and that he should be allowed a reasonable attorney's fee for such services to be fixed by the court and to be paid out of the proceeds of the sale, along with other costs. The record reveals that the attorney for the plaintiffs had to persevere not only to keep this case in court but to get it to trial. The defendants obtained continuance after continuance for the purposes of giving birth, sustaining life, recovering from injuries sustained in a car crash, and lecturing at a legal seminar.
 "In all actions and proceedings in the . . . circuit courts . . ., where there is involved the sale of property for distribution, or where there is a partition in kind of real or personal property between tenants in common, the court having jurisdiction of such action or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the . . . joint or common property, or any party in the action or proceeding, and is authorized to tax as a part of the costs in such action or proceeding such reasonable attorney's fee, which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court and to be a lien on the several parts in case of partition in kind."
§ 34-3-60, Code 1975.
The allowance of attorney's fees to be paid as costs in such actions rests largely in the discretion of the trial court.Mann v. Mann, 451 So.2d 783 (Ala. 1984); Bidwell v. Johnson,191 Ala. 195, 67 So. 985 (1915). This is an "advised, just, judicial and revisable discretion in the light of the whole record." Dent v. Foy, 214 Ala. 243, 107 So. 210 (1925),Matthews v. Lytle, 220 Ala. 78, 124 So. 197 (1929).
Justice Adams in Peebles v. Miley, 439 So.2d 137 (Ala. 1983), set out twelve criteria which should be considered by the trial court in setting attorney's fees to make certain that the trial court's discretion is advised, just, and judicial: (1) the nature and subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of the attorney's responsibility; (6) the measure of success achieved; (7) the reasonable expenses incurred by the attorney; (8) whether the fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. Likewise, when attorney's fees are allowed under § 34-3-60, Code 1975, it is on the basis of, and solely for, the benefits inuring to the common estate and to the tenants in common and not involving controversy as to respective rights or interests of individual tenants in common. Pate v. Law,277 Ala. 608, 173 So.2d 596 (1965); Graham v. Graham, 207 Ala. 648,93 So. 660 (1922). There was no attempt by the court to ascertain the compensation to be paid. *Page 1360 
This would not have been proper prior to the sale. With respect to sales for division of proceeds, the statutory design is to charge the proceeds of the sale with a reasonable compensation allowed for the services that were for the "common benefit of all" and to require payment out of the proceeds of the sale.Graham v. Graham, supra. This can be done in the final order approving the sale, if such there be. The trial court may have been premature in directing the payment of attorney's fees, but such is not error which would cause this Court to reverse.
(6) That the plaintiffs Le Sueur and Lovvorn were affordedthe "best acreage" and this fact constituted a "specialequitable reason" for allotting to Le Sueur and Lovvorn theproperty which they want with the several moieties of the otherten owners being treated as one moiety.
Clearly, two or more tenants in common may unite in a complaint against other tenants in common and may jointly elect to consider their several moieties as one moiety, and to have it set apart to them as one undivided fractional share of the whole. Fendley v. Lambert, 286 Ala. 179, 238 So.2d 346 (1970). There is no evidence that this happened.
The only evidence that the "best acreage" was offered to plaintiffs Le Sueur and Lovvorn was the following:
"Q. Well, didn't they offer you your choice?
 "A. Well, that certainly would not have been fair to the others that wanted their money. No, I don't think so. Some want to sell and some want to divide and that's what's made it hard.
 "Q. But, the ones that wanted to sell were they not given an opportunity to have the best tract of land?
 "A. Well, they were but we did not want to do that." (Testimony of Lovvorn.)
There was no evidence of the proposed division. The only evidence as to value refutes the contention that the property divided into parcels would be more valuable than the whole. There was testimony that the whole may be worth approximately $1,000,000. The tax assessment sheets show that the appraised value, as divided into smaller tracts, is less than one-fifth of $1,000,000. (This Court is aware that the manner in which the property is divided for ad valorem tax purposes would not be the manner in which the property may be divided for division, but this is the only evidence of the value of property when divided into parcels.)
In Fendley v. Lambert, supra, there were 80 acres of land and four city lots. The appellants, who owned an undivided one-half interest, offered the appellees, who owned half, their choice of the west 40 acres or the east 40 acres and their choice of two of the city lots. There was no evidence that dividing the 80 acres into two 40-acre tracts and assigning the appellants a particular tract would affect the per-acre market value of the remaining tract. This Court found that the appellants' letting the appellees choose the half of the property which appellees considered the most desirable did constitute a special equitable reason for alloting the other half of the property to the appellants.
Irons contends in his brief that only Le Sueur and Lovvorn want to sell. This is not clear from the testimony of Lovvorn or from the record. Clearly, there was an attempt by some of the defendants to be realigned as plaintiffs. For this Court to find that the trial court was plainly and palpably wrong in ordering the lake property sold, much more evidence would have had to be presented to show that an equitable division was possible, that the plaintiffs were offered their choice by all of the other tenants in common, and that the plaintiffs arbitrarily refused.
(7) That the sale notice on the lake property and houses wasfatally defective. With this, we concur. The judgment *Page 1361 
appoints a commissioner and directs the commissioner to sell the property and provides as follows:
 "Parcel one to be sold between April 15, 1985, and Amay [sic] 1985; Parcel two to be immediately offer [sic] for private sale, said private sale to be approved by the Court and if not sold prior to April 15, 1985, said parcel two is to be sold in the same manner as said parcel one."
This Court in Deegan v. Pake, 233 Ala. 435, 172 So. 270
(1937), wrote:
 "Our authorities are to the effect that a decree of this character should fix the time, place, and terms of sale, and that so important a matter should not be left to the undirected judgment of the register."
Nor should it be left to the undirected judgment of an appointed commissioner.
This Court has further written, in Hicks v. Hicks,348 So.2d 1368 (Ala. 1977), at 1369-70:
 "The word `time' in the rule that a decree of sale should fix the time, place and terms of the sale refers to the time required for publication of the notice of sale, not the day on which the sale should be conducted. Oliver v. Dudley, 267 Ala. 87, 100 So.2d 327 (1958). A direction that the clerk sell the property `after giving notice of the sale by publication for three successive weeks . . .' sufficiently refers to the period of the publication of the notice of sale."
The judgment clearly fixes the terms of the sale ("cash"), but the judgment leaves the place of the sale to the discretion of the commissioner and omits any reference to the time required for the publication of the notice of sale.
This Court in Deegan wrote:
 "Ordinarily an error of this character is subject to correction by this court. But our cases hold that in view of the importance of these matters upon the sale and the better advantage of the trial court in regard thereto, that a reversal of the decree in this regard, rather than a correction here, better serves the ends of justice."
The judgment being in all other respects free from error, it will be affirmed with the exception of the directions to the commissioner as to the sale of the property, and in this respect the judgment will be reversed, and the cause remanded to the court below for proper directions as to such sale, as herein indicated. The costs of this appeal shall be taxed against the proceeds from the sale.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, ALMON and BEATTY, JJ., concur.