The sole issue in this case is whether the award of attorney fees to the plaintiffs' counsel out of the proceeds of a sale of certain real property in Baldwin County was erroneous. The history of this case is protracted and involves three prior appeals *Page 470 
to this Court. See Cherry v. Mazzone, 568 So.2d 799 (Ala. 1990); Hall v. Mazzone, 540 So.2d 1353 (Ala. 1988); and Hall v.Mazzone, 486 So.2d 408 (Ala. 1986). The parties pertinent to this appeal, and their respective interests, are as follows:
[EDITORS' NOTE: The chart IS ELECTRONICALLY NON-TRANSFERRABLE.]
On November 27, 1984, Miriam Hall Mazzone sued Mary Hall, Hines Newell Hall, and Sarah Hall Shirley in Baldwin Circuit Court, seeking a partition in kind of the property or, in the alternative, a sale for division.[1] On December 28, 1987, Mazzone secured a judgment against Mary Hall and Hines Hall in Tuscaloosa Circuit Court in the amount of $416,868.44 in a suit by Mazzone concerning their handling, as original executors, of the estate of her father, Jesse Hall. Mazzone amended her Baldwin County complaint on January 29, 1988, alleging that certain conveyances by Mary and Hines were fraudulent and seeking to have them set aside. After a hearing on the fraudulent conveyance portion of Mazzone's complaint, the trial court entered a judgment in her favor on December 21, 1988, and set aside the subject conveyances. On July 3, 1989, the trial court determined that the real estate at issue could not be partitioned in kind and ordered a private sale. The trial court also held that Mazzone was entitled to use the Tuscaloosa judgment as a set-off against her bid to purchase the interests of Mary Hall and Hines Hall. This Court affirmed that judgment in Cherry v. Mazzone, 568 So.2d 799 (Ala. 1990).
In its final judgment of April 5, 1991, concerning the sale of the property, the trial court provided as follows regarding the fees to which Mazzone's attorneys were entitled:
 "[T]he Court does hereby find that the law firms of Chason Chason, P.C., and Thomas P. Ollinger, Jr., have rendered legal services in this matter which were for the common benefit of the parties hereto and that attorneys fees are otherwise due to be paid to said attorneys out of the sales proceeds in this case. On consideration of the factors set out in Irons v. Le Sueur, 487 So.2d 1352 (Ala. 1986), the Court finds that said attorneys are collectively entitled to the payment of a reasonable attorney fee from the proceeds of sale in this matter in the sum of $198,750.00 and that they have advanced expenses in connection with this matter in the amount of $5,561.20, for which they are entitled to reimbursement. Said fees and expenses are hereby approved as expenses of sale in this cause and the Clerk of this Court is hereby directed to pay those sums to said attorneys from the proceeds of sale on deposit in this cause."
Four days later, the trial court entered an order in which it recited its reasons for awarding the fee, based on Peebles v.Miley, 439 So.2d 137 (Ala. 1983), and Irons v. Le Sueur,487 So.2d 1352 (Ala. 1986), and *Page 471 
reviewed the 12 factors enumerated in those cases. In that order, the trial court stated, in part:
 "This Court can think of no other similar case where an attorney has been so compelled to preserve and expend greater effort, not only to keep the case in Court but to pursue it to a final resolution. Accordingly, the Court has enhanced the normal, reasonable, and customary fee of 10% by an additional 2 1/2%. To do otherwise would discourage attorneys from taking cases of this nature on a contingent fee basis and, more importantly, would deprive litigants of their rights created under statutes simply because of an inability to pay attorney's fees as they are incurred on a non-contingent basis."
L.D. Owen, as successor administrator of the estate of Sarah Shirley; Melody Genson, as bankruptcy trustee of the estate of Hines Hall; Mary Hall; Mary Lena Shirley; George Michael Shirley; and Judy Elizabeth Shirley appeal from the trial court's judgment, arguing that the attorney fee awarded is excessive, because, they contend, it violates Ala. Code 1975, § 34-3-60. That section reads:
 "In all actions and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust, or where there is involved the sale of property for distribution, or where there is a partition in kind of real or personal property between tenants in common, the court having jurisdiction of such action or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust, joint or common property, or any party in the action or proceedings, and is authorized to tax as a part of the costs in such action or proceeding such reasonable attorney's fee, which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court and to be a lien on the several parts in case of partition in kind."
The appellants argue that the trial court did not follow completely the mandate of Irons v. Le Sueur, supra, at 1359, that attorney fees awarded under § 34-3-60 must be "on the basis of, and solely for, the benefits inuring to the common estate and to the tenants in common and not involving controversy as to respective rights or interests of individual tenants in common." (Citations omitted.) Specifically, they contend that the major portion of Ollinger's efforts in the case was expended in securing the Tuscaloosa judgments against Mary Hall and Hines Hall and that a significant portion of the efforts of Allan Chason, of the Chason Chason firm, was spent securing the fraudulent conveyances judgment on Mazzone's behalf, as well as in the collection of that judgment, and that those efforts did not inure to the benefit of all of the tenants in common.
Chason testified at the hearing regarding the amount of attorney fees to be awarded:
 "Q. Would you not agree that your efforts were paramount in collecting [the Tuscaloosa] judgments, that no other lawyer from the time that the judgments were rendered has had any more influence or efforts in the collection of those judgments than you?
"A. I would agree with that.
 "Q. You would agree that the benefit of those judgments goes to Mrs. Mazzone or Mr. Mazzone, whatever the relationship is, and to Bob Prince as the executor of that estate, the Hall estate?
"A. The benefit of collecting the judgment?
"Q. Right.
"A. Sure."
Chason also testified that he spent about 100 to 110 hours on the fraudulent conveyance part of the case and that his brother, John, and their secretary, Lilly Middleton, spent a total of about 37 hours on the fraudulent conveyance aspect alone. When Genson asked Allan Chason about his efforts in that regard, he responded:
 "Q. Now, Mr. Chason, isn't it correct that [a] portion of the Irons v. Le Sueur case talks about controversy [but] it isn't one of the twelve criteria? It is totally . . . separate, isn't that correct? *Page 472 
"A. That's correct.
 "Q. It's my understanding that your testimony today, sir, is that everything that you have done is for the common benefit, is that correct?
"A. No, I don't think I would say that.
"Q. Have you separated out anything?
"A. That is not?
"Q. That is not for the common benefit?
"A. No, no, I haven't done that.
 "Q. Well, is there going to come a time, sir, when you [can tell us] what is controversial and not part of it or —?
 "A. Well, I tried to do that for Mr. Gibson [counsel for Mary Shirley]. And I don't admit those things are for the common benefit but he asked me specifically in my deposition to do that and I tried to do that. If the judge thinks that the fraudulent conveyances cases was an adversarial matter, then he will disregard that hundred, hundred-ten hours' work and set the fee accordingly."
It also appears from the trial court's order and from Ollinger's testimony that Ollinger will receive some portion of the fee, although his major contribution to the case was in obtaining the judgments against Mary Hall and Hines Hall.
Although the trial court considered each of the 12 factors enumerated in Peebles, supra, and Irons, supra, and stated in its initial order that the services Chason Chason and Thomas Ollinger rendered in this case were "for the common benefit of the parties hereto," we find from our review of the record that Allan Chason's and Thomas Ollinger's representation of Mazzone was, at least in part, adversarial in nature and that it inured to the benefit of fewer than all of the tenants in common. While we recognize that the trial court has great discretion in awarding attorney fees in a case of this type and that attorneys should be reasonably and justly remunerated for their efforts rendered for the "common benefit" of the parties, it appears from the facts of this case that not all of the attorneys' efforts were expended for the benefit of all the parties involved. Consequently, the judgment of the trial court is reversed and this case is remanded in order for the trial court to determine and consider precisely what representation by Mazzone's attorneys in fact benefited all of the tenants in common and to adjust its original award accordingly.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and MADDOX, ALMON and INGRAM, JJ., concur.
HOUSTON, J., concurs specially.
[1] Sarah Hall Shirley died on February 26, 1986, and her estate was substituted as a defendant. In addition, Robert Prince, as successor executor of the estate of Jesse Carl Hall, who had died in 1970, was added as a plaintiff in 1988. All subsequent references to "Mazzone" in this opinion will refer to Robert Prince and Miriam Mazzone collectively.