[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1019 
 I. Facts and Procedural History
This case involves seven parcels of land located in Tuscaloosa County totaling 1,162 acres. Kimberly Carver Foster, one of the plaintiffs below, owned an interest in each of the seven parcels. Various combinations of members of the Carver family also owned interests as cotenants in those parcels. Christa Carver Moses Burroughs, *Page 1020 
also a plaintiff below, owned an interest in five of the seven parcels. None of the seven parcels of land was owned by all of the cotenants involved in this case. Kimberly and Christa jointly filed a complaint for a sale of the land and a division of the proceeds, requesting that the trial court order that each parcel be sold, and the proceeds from each parcel divided among its cotenants. Kimberly and Christa named their cotenants, Tommy Carver, Wayne Carver, Dorla Carver, and Andy Carver, as defendants in the complaint. The defendants answered Kimberly and Christa's complaint and requested that the trial court allow them to purchase the interests of their cotenants in each parcel pursuant to § 35-6-100, Ala. Code 1975, which provides:
 "Upon the filing of any petition for a sale for division of any property, real or personal, held by joint owners or tenants in common, the court shall provide for the purchase of the interests of the joint owners or tenants in common filing . . . the petition or any others named therein who agree to the sale by the other joint owners or tenants in common or any one of them. Provided that the joint owners or tenants in common interested in purchasing such interests shall notify the court of same not later than 10 days prior to the date set for trial of the case and shall be allowed to purchase whether default has been entered against them or not."
Subsequently, Kimberly and Christa filed their own requests to purchase the interests of their cotenants.
The trial court appointed an appraiser to determine the value of each parcel. The parties agreed to a private auction, in which the starting bid was set at the appraised value of each parcel, and each subsequent bid increased from that value. The auction resulted in the following high bids for the parcels:
 Christa and Kimberly jointly bid $37,500 for parcel A;
Tommy bid a total of $45,600 for parcels B and C;
 Christa and Kimberly jointly bid $710,000 for parcel D;
Wayne bid $725,000 for parcel E;
 Tommy bid $977,100 for parcel F; and Dorla bid $380,000 for parcel G.
After the auction, the attorney for Kimberly and Christa filed a petition for an attorney fee pursuant to § 34-3-60, Ala. Code 1975, which states:
 "In all actions and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust, or where there is involved the sale of property for distribution, or where there is a partition in kind of real or personal property between tenants in common, the court having jurisdiction of such action or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust, joint or common property, or any party in the action or proceeding, and is authorized to tax as a part of the costs in such action or proceeding such reasonable attorney's fee, which is to be paid when collected as the other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court and to be a lien on the several parts in case of partition in kind."
The defendants, including Andy Carver, who is the appellant here, objected to the request by the plaintiffs' attorney for an attorney fee.[1] In addition, after the auction Andy filed a petition requesting that the trial court recognize him as having a *Page 1021 
one-fourth interest in the hunting, fishing, and mineral rights to parcel A, for which Christa and Kimberly had been the high bidders at the auction.
The trial court granted the request by the plaintiffs' attorney for a fee and ordered each defendant who sold his or her interest in a parcel of land to pay the plaintiffs' attorney 7%[2] of the portion of the high bid attributable to that interest and ordered each plaintiff who sold an interest in a parcel of land to pay 10% of the portion of the high bid attributable to that interest.[3] The trial court denied Andy's request that he be granted an interest in the mineral, hunting, and fishing rights to parcel A. The defendants filed motions to alter, amend, or vacate the trial court's rulings, which the court denied.
Only Andy appealed, arguing that § 34-3-60 does not apply to co-owner purchases under § 35-6-100 et seq. He also argues that, even if § 34-3-60 does generally apply to co-owner purchases, an attorney fee should not have been allowed in this case because, he says, the services of the plaintiffs' attorney did not benefit all of the parties involved and there was no common fund created from which to pay the fee. Next, Andy argues that, even if the trial court was correct in awarding an attorney fee in this case, the actual fee awarded was excessive. Finally, Andy argues that the trial court erred in refusing to recognize his interest in the hunting, fishing, and mineral rights to parcel A.
 II. Standard of Review
Questions of law are reviewed de novo. Alabama RepublicanParty v. McGinley, 893 So.2d 337, 342 (Ala. 2004).
 "The allowance of attorney's fees to be paid as costs in [sale of property for distribution cases or where there is a partition in kind of real or personal property between tenants in common] rests largely in the discretion of the trial court. Mann v. Mann, 451 So.2d 783 (Ala. 1984); Bidwell v. Johnson, 191 Ala. 195, 67 So. 985 (1915). This is an `advised, just, judicial and revisable discretion in the light of the whole record.' Dent v. Foy, 214 Ala. 243, 107 So. 210 (1925), Matthews v. Lytle, 220 Ala. 78, 124 So. 197 (1929)."
Irons v. Le Sueur, 487 So.2d 1352, 1359 (Ala. 1986).
 III. Analysis A.
Andy's first argument is that § 34-3-60 does not apply to co-owner purchases under § 35-6-100 et seq. He points out that §34-3-60 was adopted before the co-owner-purchase provisions found in § 35-6-100 et seq. were adopted, and that those provisions, while allowing an award of appraiser fees, make no mention of attorney fees or of § 34-3-60.
We disagree. Section 34-3-60 provides:
 "In all actions and proceedings . . . where there is involved the sale of *Page 1022 
property for distribution, . . . the court having jurisdiction of such action or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing . . . any party in the action or proceeding. . . ."
"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says." IMED Corp. v. Systems Eng'g Assocs.Corp., 602 So.2d 344, 346 (Ala. 1992). Section 34-3-60 clearly applies to "all actions and proceedings . . . where there is involved the sale of property for distribution." (Emphasis added.) Proceedings under § 35-6-100 et seq. involve the sale of property for distribution. The interests in the parcels of land involved in this case were sold pursuant to court order, and the proceeds were distributed to the various owners of those interests. At the time of the enactment of § 35-6-100, the catchall language of § 34-3-60 had been the law of this State for over 70 years. The legislature does not operate in a vacuum each time it enacts new legislation; it is charged with knowledge of existing law. Hexcel Decatur, Inc. v. Vickers, 908 So.2d 237,240 (Ala. 2005). If the legislature intended to except proceedings under the co-owner-purchase provisions from the broadly phrased reach of § 34-3-60, it could easily have done so. Whether the applicability of § 34-3-60 to co-owner purchases is sound public policy is a matter within the purview of the legislature, not this Court.
 B.
Andy's next argument is that the services of the plaintiffs' attorney did not benefit all the parties involved in the sale of the property for a division of the proceeds. See, generally,Ex parte Martin, 775 So.2d 202, 206 (Ala. 2000) (noting that an attorney fee can be awarded under § 34-3-60 only if the services of the attorney were performed "`for the common benefit ofall.'" (quoting the 1907 codification of what is now § 34-3-60) (emphasis added in Martin)). Specifically, Andy points out that the trial court ruled that one of the parties, Dorla Carver, was not required to pay any portion of the attorney fee because the plaintiffs' attorney spent a significant amount of time resisting Dorla's owelty claim.[4] Andy contends that, because the trial court held that some of the actions of the plaintiffs' attorney were adverse to Dorla's interests in the proceedings, none of the other defendants should have been required to contribute to the attorney fee. In other words, according to Andy, "[i]f there is an adverse claim, it affects the whole group, destroying a common benefit to all, i.e., one bad apple spoils the whole barrel." (Andy's brief, at 30-31.)
The three cases Andy cites in support of his so-called "bad apple" argument involved parcels of land in which all the cotenants owned an interest, and the attorneys who claimed to be entitled to fees in those cases performed acts adverse to some of those cotenants. See Godwin v. Dorgan, 811 So.2d 503 (Ala. 2001); Shirley v. Mazzone, 591 So.2d 469 (Ala. 1991); andJernigan v. Jernigan, 678 So.2d 1169 (Ala.Civ.App. 1996). In contrast, the instant case involves the sale of multiple parcels of land, none of which was jointly owned by *Page 1023 all the cotenants. The proceedings below in effect consisted of six separate private sales of land for a division of the proceeds.[5]
The only parcel in which Dorla had an ownership interest before the auction was parcel G.[6] Andy did not have an interest in parcel G. Therefore, we consider the sale of Andy's interests separate from the sale of Dorla's. Regardless of whether Dorla benefited from all the services of the plaintiffs' attorney with respect to the sale of parcel G, if Andy and his cotenants in the parcels in which he actually had an ownership interest benefited from those services (as to those parcels), Andy's bad-apple argument must fail. In other words, if Andy and his cotenants benefited, at least with respect to the sale of Andy's interests, there was no bad apple, because there were no disparate interests among his cotenants.
The other cotenant, other than Dorla, Andy contends did not benefit from the services of the plaintiffs' attorney is Andy himself. He argues that he never wanted to sell his interests in the real property. However, he cites no authority for the proposition that, in a sale-for-division case, the fact that a cotenant did not want to sell his interest in property defeats a finding, for purposes of determining whether to award an attorney fee, that there was a common benefit, and we decline to so hold. See also Shirley v. Mazzone, 591 So.2d at 472 (Houston, J., concurring specially) ("`The common benefit is in bringing about a division of the lands through a judicial sale, so that each of the joint owners can have and enjoy his own.'" (quoting Dent v.Foy, 214 Ala. 243, 248, 107 So. 210, 215 (1925))). The plaintiffs point out that Andy received $597,000 in exchange for his interests in the real property, approximately $240,000 more than the appraised value of those interests. We agree with the plaintiffs and the trial court that Andy benefited from the services of their attorney.[7]
 C.
Andy also argues that, even if this Court finds that a common benefit existed, which we have, the trial court erred in awarding fees to the plaintiffs' attorney because, Andy contends, there was no "common fund" from which to award those fees. He points out that, before the auction, each party desiring to purchase the interest or interests of his or her cotenants paid into court an amount equal to the appraised value of those interests. The bids at the auction were based on the values of the parcels. After the auction, the winning bidder was to pay into court the difference between the portion of the winning bid attributable to the purchase price of his or her cotenants' interests and the amount *Page 1024 
the high bidder had previously paid into court based on the appraised value of those interests. Andy argues that
 "[b]ecause of the complexity of the ownership and varying ownership interests, there is no common fund. The amount paid into court by the highest bidder on each parcel was a separate fund belonging only to the losing bidder or bidders on that parcel. To hold, as the trial court did, that these six separately owned amounts of money constituted one common fund is . . . obvious error."[8]
(Andy's brief, at 32.)
The cases Andy cites in support of his argument do not expressly hold that the absence of a common fund in a sale-for-division case prevents the trial court from awarding an attorney fee under § 34-3-60.[9] In Godwin, supra, the Court did note that a common fund existed from which the attorneys requested that their fees be paid, and the Court stated that § 34-3-60 "plainly authorizes a trial court to order that attorney fees be paid out a common fund created by the sale of property." But the questions of whether a common fund must
exist before fees may be awarded under § 34-3-60, and, if so, what constitutes such a fund, were not answered in Godwin.
In Shirley, supra, the Court described the issue as "whether the award of attorney fees to the plaintiffs' counsel out of the proceeds of a sale of certain real property in Baldwin County was erroneous." 591 So.2d at 469. As in Godwin, the Court inShirley did not answer the question of what constitutes a common fund and whether a common fund must exist before an attorney fee may be awarded under § 34-3-60.
In Jernigan, supra, the Alabama Court of Civil Appeals considered the propriety of the trial court's award of attorney fees from what that court described as a common fund, which appears from the opinion to have been generated from the sale of real property held jointly by tenants in common. But, likeGodwin and Shirley, Jernigan did not directly address the question whether a common fund must exist before an attorney fee may be awarded under § 34-3-60.
In any event, Godwin, Shirley, and Jernigan each involved the sale of a parcel or parcels of land in which all cotenants held an interest. The instant case involves multiple parcels, none of which were owned by all the cotenants. And at least with respect to the sale of the parcels of land in which Andy held interests, to the extent there exists a requirement that, before an attorney fee may be awarded under § 34-3-60 in a sale-for-division case there must have been created a common fund from which the attorney fee was to be taken, that requirement has been met. The attorney fee due for the sale of those parcels in which Andy held an interest was calculated based on the highest bid for each of those parcels. Andy was required to pay, as an attorney fee, a percentage of the portion of the winning bid attributable to his interests, as were all of his cotenants in those parcels. The "common fund" resulting from the sale of each parcel of land, if the existence of such a fund was required, was the amount of the winning bid for each parcel.
To the extent that Andy argues that the moneys making up the common fund must *Page 1025 
be paid into court or otherwise deposited in a common account before they can form the basis of an attorney-fee calculation, the Court's holding in Mann v. Mann, 451 So.2d 783 (Ala. 1984), answers that argument. In Mann, the trial court ordered that part of a tract of land owned by tenants in common be partitioned and the remainder of the tract sold. The plaintiff in Mann
owned the portion of the tract that was partitioned. The trial court ordered an attorney fee to be paid in part from the proceeds of the sale, but also ordered the plaintiff to pay intocourt her share of the attorney fee. This Court affirmed the trial court's order as a valid exercise of its discretion under §34-3-60.
 D.
Andy alternatively argues that, even if the trial court did not err in awarding an attorney fee, the actual fee awarded was excessive. In Irons v. Le Sueur, supra, a case involving an award of attorney fees under § 34-3-60 after a sale for division, this Court, citing Peebles v. Miley, 439 So.2d 137 (Ala. 1983), noted 12 factors a trial court needs to consider in awarding an attorney fee:
 "(1) the nature and subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of the attorney's responsibility; (6) the measure of success achieved; (7) the reasonable expenses incurred by the attorney; (8) whether the fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances."
487 So.2d at 1359.
In its order awarding the attorney fee, the trial court stated that "the following criteria had some application in this case: (1) the time consumed, (2) the professional experience and reputation of the attorney, (3) the measure of success achieved, (4) as to Plaintiffs, whether a fee is fixed or contingent, and (5) the fee customarily charged in the locality."
While the trial court indicated in its order that in setting the attorney fee it considered the time the plaintiffs' attorney had spent on the case, Andy points out that the plaintiffs' attorney did not testify as to the amount of time he spent, nor did he submit any time records to the trial court. We note that the plaintiffs, in response to this contention, cite only a brief they filed with the trial court in support of their petition for an attorney fee in which they stated that their attorney spent 200-300 hours working on the case. However, "`briefs of counsel, with the statements of their contentions, [are] not evidence in the case.'" Burkes Mech., Inc. v. Ft. James-Pennington, Inc.,908 So.2d 905, 911 (Ala. 2004) (quoting Fleming v. Copeland,210 Ala. 389, 391, 98 So. 128, 129 (1923)). The record below on this issue consists of hypothetical questions posed to an expert asking him to assume that 200 to 300 hours had been expended on this case.[10] Proof of the assumption, however, is essential. *Page 1026 
See the Advisory Committee's Notes to Rule 703, Ala. R. Evid. ("Rule 703 leaves unaffected the preexisting Alabama law requiring that the facts or data relied upon by the expert, and gotten by the expert other than by firsthand knowledge, generally must be admitted into evidence.").
Even if we were to treat the plaintiffs' estimate as sufficient proof of the time spent by their attorneys on the case, it translates into a fee of $650-$970 per hour for all of the work done in the case. As noted, Andy is the only defendant below to appeal the trial court's judgment. Therefore, we do not consider whether the fee awarded based on the work benefiting the other defendants was excessive. Of course, we have no way of determining exactly how much time the plaintiffs' attorney spent working on the sale of the parcels in which Andy had an interest, as opposed to the other parcels.
At the hearing on the request for an attorney fee by the plaintiffs' attorney, much testimony was elicited regarding the customary fee of 10% of the sales price of the property involved. Indeed, in reading the trial court's order, it appears that particular factor weighed heavily in the court's decision. We are mindful that, in Anderson v. Lee, 621 So.2d 1305, 1307 (Ala. 1993), a case involving a sale for distribution and an award of attorney fees under § 34-3-60, this Court did state that "all of [the 12 Peebles] criteria need not be met." But the Court inAnderson did not specifically hold that time expended was a criterion that need not be considered. In fact, while the attorney fee awarded in Anderson amounted to 10% of the total proceeds of the sale of the real property, the fact that the attorney had expended 200 hours on the case contributed to the Court's approving a fee of $20,000. A fee of $20,000 for 200 hours of work translates into $100 per hour.
Courts in other jurisdictions have held that fees in these types of cases should be based on more than simply a percentage of the value of the property divided or sold. See, e.g., Nelsonv. Hotchkiss, 601 S.W.2d 14, 21 (Mo. 1980) ("The attorney [in a partition proceeding] is entitled to a reasonable fee in light of the nature and extent of the services rendered, and the fee should not be calculated according to an arbitrary, fixed percentage of the value of the property involved."); Brooks v.Kunz, 597 S.W.2d 183, 189 (Mo.Ct.App. 1980) ("Although it is error to base the fee award solely on a percentage of the sale price, the sale price is one factor for consideration by the court in establishing the fee. In this case, however, there was no other substantial evidence to support the award. Therefore, the judgment on this point must also be reversed and remanded."); and Muller v. Martin, 116 Cal.App.2d 431, 435, 253 P.2d 686,688-89 (1953) ("In making this analysis of plaintiff's computations, we are not holding that there is any fixed percentage or range of percentages for use as a formula in determining the reasonableness of fees to be paid for services [in partition and sale-for-division cases]. The real question is the reasonable worth or value of the services rendered. The ratio that sum bears to the total value of the property involved will naturally vary as the conditions and circumstances attending the partition and sale vary.").
We hold that, although the value of the property involved or the amount of sale proceeds in a partition or sale-for-division case is relevant to considerations such as the risk associated with undertaking the responsibility for rendering appropriate legal services,[11] the reasonableness *Page 1027 
of an attorney-fee award cannot be based solely on an arbitrary percentage of that value. The fee must bear a reasonable relationship to the time expended on the case, in light of the hourly rate of attorneys practicing in the community. In addition, the fact that no periodic payments are made until the case is over may also play a role in enhancing an otherwise normal hourly rate. Of course, maintenance of accurate time records and due proof at an attorney-fee hearing of time expended by counsel could in a proper case justify an award in excess of a customary percentage of the proceeds of the sale. Nevertheless, we find the conclusion in Brooks v. Kunz, supra, applicable to this proceeding. As the court there stated, "Although it is error to base the fee award solely on a percentage of the sale price, the sale price is one factor for consideration by the court in establishing the fee. In this case, however, there was no other substantial evidence to support the award." 597 S.W.2d at 189.
This Court has historically accepted local custom as to a percentage fee in a partition or a sale-for-division proceeding as "persuasive, but not conclusive, of the reasonable value of such service." Dent v. Foy, 214 Ala. 251, 252, 107 So. 218, 218
(1925). Obviously, the learned trial court here applied the rule of Dent when it reduced the customary percentage of 10% to 7%. Nevertheless, we conclude that the trial court exceeded its discretion in its determination of the amount of the attorney fee payable by Andy. We therefore reverse its judgment as to this issue and remand the case for the trial court to determine how much time the plaintiffs' attorney expended in facilitating the sale allocable to the parcels in which Andy sold his interests and to award a reasonable fee commensurate with the time spent, as well as other factors, including the absence of periodic payments, any risk associated with the appropriate discharge of legal responsibilities in the undertaking, and any other applicable factors set forth in Peebles and Irons v. LeSueur.
 E.
Andy's final contention on appeal is that the trial court erred in refusing to recognize his interest in the hunting, fishing, and mineral rights to parcel A. At the auction, Kimberly and Christa were the high bidders on parcel A. Andy made no mention of his claimed rights in any of his pleadings filed with the trial court before the auction was held. The complaint for sale of the property for the division of the proceeds described the ownership interests in parcel A, making no mention of the hunting, fishing, or mineral rights. In Andy's answer to that complaint, he admitted the allegations respecting ownership interests, and he made no mention of his alleged claim to such rights until after the auction had been held.
"[T]he doctrine of judicial estoppel `applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted.'" Selma Foundry Supply Co. v.Peoples Bank Trust Co., 598 So.2d 844, 846 (Ala. 1992) (quoting Oneida Motor Freight, Inc. v. United Jersey Bank,848 F.2d 414, 419 (3d Cir. 1988)). "The law is settled in Alabama that a party who has, with knowledge of the facts, assumed a particular position in a judicial proceeding is estopped from assuming a position inconsistent to the first one to the prejudice of an adverse party." Russell v. Russell, *Page 1028 404 So.2d 662, 665 (Ala. 1981). It appears from the record that parcel A was appraised without taking into account any encumbrance on the hunting, fishing, or mineral rights. Kimberly and Christa made the high bid on parcel A with the understanding that they would own it free and clear, and Andy, who owned a cotenant interest in that parcel before the auction, benefited from that high bid. We agree with the trial court that Andy's petition for hunting, fishing, and mineral rights to parcel A was due to be denied.
 IV. Conclusion
The judgment of the trial court is affirmed insofar as it holds that § 34-3-60 applies to co-owner purchases under § 35-6-100 et seq. The judgment is also affirmed as to its application of the common-benefit theory and its recognition of a common fund from which to pay the attorney fee and insofar as it rejects Andy's petition for hunting, fishing, and mineral rights to parcel A. The trial court's judgment is reversed, however, as to the amount of the attorney fee awarded, and the cause is remanded for further proceedings consistent with this opinion as to that issue as it relates to Andy's liability for payment of the attorney fee.[12]
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NABERS, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] Andy was not the high bidder for any of the parcels at the auction.
[2] According to the trial court's order awarding attorney fees, the trial court found that the plaintiffs' attorney spent some of his time challenging the owelty claim (see note 4) of one of the defendants and did not have to perform certain services usually necessary in sale-for-division cases. Therefore, the trial court made a downward adjustment of 3% from the customary 10% fee for sale-for-division cases.
[3] The trial court stated in its order that, because of a contingency-fee contract between the plaintiffs and their attorney and because of the services the plaintiffs' attorney devoted to the plaintiffs' interests, the court did not make a downward adjustment of the customary 10% as to the fee charged the plaintiffs.
[4] Owelty of partition is a sum of money paid by one cotenant to the other "`when a partition has been effected between them, but, the land not being susceptible of division into exactly equal shares, such payment is required to make the portions respectively assigned to them of equal value.'" English v.Brantley, 361 So.2d 549, 552 (Ala. 1978) (quoting Black's LawDictionary 1258 (4th ed. 1968)).
[5] While there were seven parcels of land involved, two of those parcels (parcels B and C) were combined and auctioned off together.
[6] Dorla maintains an ownership interest in parcel G, as she was the high bidder on that parcel at the auction.
[7] Andy argues in his reply brief that, because the plaintiffs' attorney resisted Andy's request that he be awarded an interest in the hunting, fishing, and mineral rights to parcel A, Andy did not benefit from the attorney's services. Andy does not make this argument in his opening brief. "[T]his Court does not address issues raised for the first time in a reply brief."Byrd v. Lamar, 846 So.2d 334, 341 (Ala. 2002). In any event, we note that Andy's petition for hunting, fishing, and mineral rights to parcel A was not filed until after the auction was held, after all parties had requested the court to confirm the sales of the interests in the parcels, and after the plaintiffs had filed their petition for an attorney fee. In other words, Andy's claim for hunting, fishing, and mineral rights was not filed until after the plaintiffs' attorney had performed all of the services for which he claimed to be entitled to compensation.
[8] Andy states that there are "six separately owned amounts of money" rather than seven because two of the parcels were combined and auctioned together (see note 5).
[9] Andy cites Godwin, Shirley, and Jernigan.
[10] It appears from the briefs and the record that the plaintiffs' current attorney was not the only counsel to represent the plaintiffs below. During the hearing on the issue of attorney fees, the plaintiffs' attorney suggested to an expert witness that the plaintiffs' former counsel had an interest in any fee that might be awarded. However, there is no evidence indicating how much time that former counsel expended on the case in addition to the 200-300 hours the plaintiffs' current attorney posited that he had expended.
[11] We are not here confronted with the type of risk associated with a contingency-fee contract for a tort claim in which the risk of nonrecovery justifies a substantially higher percentage.
[12] Because none of the other defendants appealed from the trial court's judgment, the reasonableness of the attorney fee as to them is not before us.