This case concerns 300 acres of land situated in Monroe County. The land is divided into two tracts: the NE 1/4 of Section 35, Township 5 North, Range 4 East (160 acres) and the NE 1/4 of NW 1/4, Section 27, Township 5 North, Range 4 East; SE 1/4 of NW 1/4; NE 1/4 of SW 1/4 and W 1/2 of NW 1/4 of SE 1/4, Section 22, Township 5 North, Range 4 East (140 acres). There are two issues on this appeal.
 I
The first issue concerns the ownership of the 160 acre tract. Regarding this issue the trial court held:
 "1. That John English bought the Northeast Quarter of Section 35, Township 5 North, Range 4 East, at a tax sale on the 24th day of September 1934, in Monroeville, Alabama, that the record owner of the above described property before this tax sale was Jordan Harston, and that the property was assessed in 1933 to Jordan Harston and Jordan Harston alone and was sold because the 1933 taxes were unpaid, and John English went into peaceful possession immediately after the tax sale and he or his heirs or assigns have remained in possession until this date.
 "2. That John English or his heirs or assigns assessed and they alone assessed and paid the taxes on the above described property from 1935 until the present date and have exercised peaceful possession of the said property during that time.
 "3. That Armstead English or his heirs have failed to establish title to the above described property by adverse possession either before the tax sale or thereafter.
 "4. That the title to the Northeast Quarter of Section 35, Township 5 North, Range 4 East, rests in the heirs and assigns of John English, deceased, and no other person has any right, title or interest, in or to the above described property.
 "5. That any person occupying any part of the Northeast Quarter of Section 35, Township 5 North, Range 4 East, are trespassers unless they are heirs or assigns of John English, but any person in possession of or claiming any possession through Armstead English or his heirs who have crops on any portion of said lands shall have until December 31, 1977 to remove same from said lands.
 "It is therefore the Judgment of the Court that the Northeast Quarter of Section 35, Township 5 North, Range 4 East, was owned by John English and is now owned by his heirs and assigns.
 "It is the further judgment of this Court that the heirs and assigns of John English have a clear and merchantable title to the above described 160 acres of land, and that Armstead English, his heirs or assigns or any other person have no right, title or interest in the above said lands."
The appellants in this case, Lewis English, et al., each claim a joint interest in the 160 acre tract as heirs of Armstead English. The issue, therefore, is whether Armstead English ever acquired any interest in the 160 tract.
An examination of the record reveals that letters patent were issued in 1904 conveying the 160 acre tract to Jordan Harston. He and his son, Jordan Harston, Jr. occupied the tract until 1934. The 110 acres were assessed in the name of Jordan Harston from the years 1906 to 1920 and 1931 to 1934.
In 1934 the 160 acre tract was sold by the Probate Court of Monroe County for the payment of delinquent taxes. The purchaser at the tax sale was John English and, although a tax deed was never issued to John English, the record shows the tract was assessed in his name from the years 1935 to 1977. *Page 551 
There is no evidence that Jordan Harston or his son ever deeded the property to Armstead English. Armstead English could have acquired title to the tract only by adverse possession. The record shows the 160 acres were assessed in his name from the years 1921 to 1931. Having the 160 acre tract assessed in his name for ten years, Armstead English met the first requisite for adverse possession under Code of Ala., Tit. 7, § 828 (1940) (current version at § 6-5-200, Code 1975). However, the record shows that for the tenth year, 1931, the land was also assessed in the name of Jordan Harston. Additionally, there is no evidence that Armstead English ever occupied or worked the 160 acres. Although conflicting, the evidence tends to show that Jordan Harston and Jordan Harston, Jr., were the only persons to exercise actual possession of this tract during the ten year period from 1921 to 1931.
Contrary to the claim by appellants that Armstead English acquired the 160 acres by adverse possession, the tendencies of the evidence are that John English acquired the property in such manner. The record reveals that after purchasing the tract at the tax sale in 1934, John English assessed, farmed, stumped, and timbered the property. The evidence is that those persons using or living on the tract did so by permission of John English or his heirs of their assigns. It appears that John English and his heirs have openly and notoriously possessed the 160 acre tract under claim of right ever since the tax sale in 1934.
According to the evidence English was entitled to a tax deed in 1937, three years after the tax sale, pursuant to Code of Ala., Tit. 51, § 276 (1940) (current version at § 40-10-29, Code 1975). Although John English did not obtain a tax deed, he acquired the 160 acre tract by adverse possession in 1940, three years after he became entitled to the deed. Code of Ala., Tit. 51, § 295 (1940) (current version at § 40-10-82, Code 1975). The facts also indicate sufficient possession for John English and his heirs to acquire title under Code of Ala., Tit. 7, § 828 (1940) (current version at § 6-5-200, Code 1975) and by prescription.
The question of adverse possession is one properly determined by the trier of fact. Butts v. Lancaster, 279 Ala. 589,188 So.2d 548 (1966). When judgment is based upon evidence taken by the trial court ore tenus, it will not be set aside unless clearly erroneous or unsupported by credible evidence under any reasonable aspect of that evidence. Hill v. Delchamps, 294 Ala. 14, 310 So.2d 871 (1975). Although there was some evidence presented to show that the 160 acre tract was used and held by all the heirs of Armstead English, the record supports the conclusion of the trial court to the contrary. Many witnesses without an interest in the property, and some who would take only as an Armstead English heir, testified the land was known to be that of Jordan Harston and after the tax sale that of John English. The conclusion of the trial court is neither clearly erroneous nor without supporting credible evidence.
 II
The second issue on this appeal involves whether the 140 acre tract can be equitably partitioned in kind. There is no dispute about ownership of this tract. It is the property of the Armstead English heirs. This includes the heirs of John English since he was an heir of his father, Armstead English.
Adam English brought this suit for division as an heir of Armstead English. Tolbert M. Brantley purchased the interest of Adam English and has been substituted as a plaintiff/appellee. Concerning this issue the trial court held:
 "It is further ORDERED and ADJUDGED that the * * * [140 acres] were owned by Armstead English and now owned by his heirs of their assigns * * *
 "It is further ORDERED that said above lands * * * cannot be equitably divided and that a sale for partition and division is necessary to perfect a division thereof among the joint owners." *Page 552 
Although there is little evidence in the record concerning this issue,[1] the fact there are 57 named defendants with interests varying from 1/6 to 1/396 in only 140 acres suggests that any partition in kind would be virtually impossible and therefore inequitable. Carden v. Vanderslice, 336 So.2d 1082 (Ala. 1976). Additionally the record indicates the land varies in its use and quality. Part is timbered, part is under cultivation, and part has buildings on it.
Appellants additionally assert that the trial court should allow them to purchase the interest of Tolbert Brantley, by the use of the equitable device of owelty. Section 190 of Title 47 of the Alabama Code (current version at § 35-6-24, Code 1975) does allow a circuit court to provide owelty. Owelty of partition is:
 "* * * A sum of money paid by one of two coparceners or co-tenants to the other, when a partition has been effected between them, but, the land not being susceptible of division into exactly equal shares, such payment is required to make the portions respectively assigned to them of equal value. * * *" Black's Law Dictionary (4th Ed. 1968), p. 1258.
It is inapplicable in this situation because there must first be a partition in kind. Hall v. Hall, 250 Ala. 702,35 So.2d 681 (1948); 68 C.J.S. Partition § 15 (1950). The trial court held this could not be done and we agree.
Appellants also raise the issue of the constitutionality of Code of Ala., Tit. 47, § 186 (1940) (current version at §35-6-20, Code 1975), which authorizes the circuit court to sell the property for division. Appellants claim that they have been denied due process of law because it was not shown at the trial level that the land could not be equitably divided in kind and because the plaintiff had testified he would accept the fair market value of his interest in the land.
The ore tenus rule applies to a trial court's determination of whether land should be sold for division because it cannot be equitably partitioned in kind. Hicks v. Hicks,348 So.2d 1368 (Ala. 1977). The finding of the circuit court that the property cannot be equitably divided in kind was supported by credible evidence and is not clearly erroneous. Section 186 did not prevent the appellants from purchasing the interest of the plaintiff prior to trial. This statute does not deny due process of law to appellees. It allows a co-tenant to force a sale for division only after proving the property cannot be equitably divided in kind. It provides a reasonable means of allowing all co-tenants maximum freedom in dealing with their interest in jointly owned property.
The judgment of the circuit court not being clearly erroneous and supported by credible evidence is due to be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.
[1] There is testimony of plaintiff, Brantley, describing difference in the nature of various portions of the land; also his opinion that it cannot be equitably divided in kind.