An earlier appeal of this matter resulted in a reversal and remand on the ground that the trial court's order, that the property in question could not be equitably divided, was unsupported by evidence. Upon remand the trial court conducted an evidentiary hearing ore tenus following which an order was entered decreeing a public sale on the ground that the property could not be equitably divided. The defendants challenge that order, and also contend that the trial court erred in not considering their plan for equitable division whereby some of *Page 107 
the defendants wished to join their respective interests as a moiety and thus have it set aside to them without a sale.
In our earlier opinion, Ragland v. Walker, Ala.,387 So.2d 184 (1980) we pointed out at 186 that
 the evidence before the trial court was confined to the identity of the heirs, the amount of their interests, the fair market value of the property, and the amount of attorneys' fees.
At the second hearing none of these matters was made an issue by the parties; the second hearing was treated by the trial court and the parties as a continuation of the first, and the trial court proceeded to take evidence on the question of whether or not the land could be equitably divided. One of the witnesses testifying for the plaintiffs was Henry V. Walker, husband of Ora Ragland Walker, a daughter of Sallie Ragland, the deceased. Ora Ragland Walker owned an undivided one-eighth interest in the smaller of the two tracts of land, comprising about 34.5 acres, and she and her husband together owned a one-fourth interest in the larger tract consisting of approximately 80 acres. Walker testified to his familiarity with these separate and noncontiguous tracts, one landlocked and the other with road frontage on its north side. He described the 80-acre tract as having a creek, which occasionally flooded, running through its eastern end, containing some high land and some low land, some open farm land and some wooded, some hilly, with a cemetery and gravel road on part of it. He acknowledged that some of the heirs, five in number, each owned a 1/320th interest in each of the two tracts, and testified that in his opinion the lands could not be equitably divided down to 320ths. He also acknowledged that there were three dower interests to be recognized. Another witness, Jamie Ragland, the widow of Ed Ragland, testified that she lived on the 80-acre tract, worked on it, and was familiar with the land, the creek and the cemetery. She acknowledged that she wanted to have the land sold and obtain her share of the money. She "guessed" the land could be divided but didn't know how it could be done.
The defendants' witness, James Ragland, testified to his responsibility for the rental of the land and its upkeep. His opinion was that the land could be equally divided by grouping the heirs into those who wished to sell and those who did not, and dividing the lands in that manner. He conceded that he had not employed a surveyor and had no legal descriptions showing such a proposed division. In describing three separate plans for such a division, Ragland acknowledged that no separate values for creek and farm lands were established, but that the total value of the whole property was aggregated for the purpose of drawing lines, even though in some cases the crop land was worth more than the creek land. The equality in treatment for those having any interest in the lands would be based upon the appraised value of divisible segments of the property, not the amount which a sale of the entire property would bring. He elaborated with a further explanation of his alternative plans:
 They purport to represent a division of the property as I discussed earlier. The two plans here include only the 80 acres because of the 33 acre plot being off to itself and Exhibit 2 shows if you propose we leave it to the ones that want to sell, if they want the 33 acres, they could come back into the 80 acres and take the rest of their property off the eastern end or the western end or if they go by exhibit number 1 here, they could take their property using either one of the three proposals, but correction on Exhibit 1 here, they could take their 41% of what we think is the amount of people that want to sell, their value came out to be about 41% of the value of the property, they could take that amount out of the 80 acre tract on the eastern bounds or the western boundary.
He then disclosed that his plan placed together all the people who wanted their money and required them to take land instead of money. *Page 108 
Our review of the record convinces us that the trial court had before it sufficient evidence from which it could have found that a fair and equitable partition in kind could not have been made. Meador v. Meador, 255 Ala. 688, 53 So.2d 546
(1951), and those findings and the decree based thereon are entitled to a presumption of correctness which may be overturned only if plainly or palpably erroneous. Elliott v.Burch, 293 Ala. 244, 301 So.2d 557 (1974). That evidence disclosed that this real property, as described before, consisted of several types with differing physical characteristics, representing different uses and values, and was owned by some twenty-six different heirs with ownership interests varying from one-eighth to as little as one-three hundred twentieth. The difficulty in dividing these particular tracts among the interests represented is apparent. Accord,Carden v. Vanderslice, Ala., 336 So.2d 1082 (1976).
The theory upon which the defendants based their moiety plan arose from the decision in Fendley v. Lambert, 286 Ala. 179,238 So.2d 346 (1970), discussed in Hicks v. Hicks, Ala.,348 So.2d 1368 (1977). Under Fendley this Court found a "special equitable reason" for allowing partition of lands in kind rather than sale when certain tenants in common offered other tenants in common, all owning like interests, the option of selecting lands representing the others' interests. It is apparent from reading Fendley that the record in that case disclosed a preference on the part of the proposed selectees for the lands which the offers would have allowed the former to select. This was an essential part of the "special equitable reason" which was found to exist in that case. The mere offer of one or more of several cotenants to have their interests treated as a moiety so as to justify partition in kind has not been considered as such a "special equitable reason," however. In Hicks, supra, the other tenants in common offered the petitioner for sale her own selection of her life estate out of 1,441 acres of land in an attempt to prevent sale. A plurality of this Court refused to hold that such an offer was a "special equitable reason" which would prevent a sale and division. One of the concurring opinions in Hicks pointed out that allocation of the lands in proportionate shares in kind against the common interest holder's petition for sale must not affect the saleable value of the residue. This principle was also part of the "special equitable reason" found in Fendley, supra.
This Court in Hicks, supra, was divided on the presence or absence of facts which would have established the "specialequitable reason" allowing partition rather than sale and division of the proceeds. It is clear that no such facts have been advanced in this case, however. The defendants have offered several plans from which the Court would decree that those who wish to sell must sell "out of the 80 acre tract or the 34 acre tract plus some at the eastern bound or western bound of the 80 acre tract." The record is bare of any evidence that such a procedure would have left the saleable value of the residue unaffected, even if the various interests could have been equitably determined and allocated through the use of percentages divided into the aggregate appraised value of $206,000.00. To the contrary, under the evidence the trial court could have reasonably concluded that the saleable value of the residue would be adversely affected, given the nature of the land, the diversity of the interests, and the consequent difficulty and expense of allocating the specific interests. Under these circumstances we cannot find plain or palpable error in the decree below. That decree, therefore, must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur. *Page 109