THOMAS, Judge.
This appeal involves a one-acre parcel of property (“the property”) located in Pike County. The record indicates that Ver-neaser Barrow owned the property at the time that she died intestate in 1997. Upon her death, each of Verneaser’s six children inherited a 1/6 interest in the property; however, since 1997, two of Verneaser’s children have died, and each deceased child’s 1/6 interest in the property went to his or her respective heirs. Larry Barrow, Mary Baez, Ethel Thomas, and Dorothy Smith are Verneaser’s remaining living children. Taurus LeDavid Myhand is the son of one of Verneaser’s deceased children; the record indicates that he inherited a 1/18 interest in the property.
On July 16, 2013, Taurus filed a complaint for a sale for division of the property, pursuant to § 35-6-20 through § 35-6-25, Ala.Code 1975, in the Pike Circuit Court (“the trial court”). The complaint included a legal description of the property; the complaint also indicated that the property was owned by 13 tenants in common, listed the name of each cotenant, and specified each cotenant’s ownership interest. The complaint further stated that the property could not be equitably divided. Taurus also filed a notice with the trial court indicating that he wished to purchase the interests of the other cotenants pursuant to § 35-6-100 et seq., Ala.Code 1975. In August 2013, Larry, Mary, and Dorothy each filed pro se motions in opposition to the proposed sale. The record also contains a letter from Ethel stating that, although she agreed that the property should be sold, she “[did] not feel the land should be sold under the conditions suggested in the [complaint]” and that she wanted the property “to be sold privately.”[1]
Taurus filed a motion on January 17, 2014, to serve notice by publication on six of the cotenants, which the trial court granted. On April 16, 2014, Taurus filed a motion for a default judgment against the cotenants who had failed to respond to the complaint and specifically noted that Larry, Mary, Dorothy, and Ethel were the only cotenants who had responded; the motion also sought the appointment of a guardian ad litem for three minor coten-ants. Also on April 16, 2014, Taurus filed a motion to set the cause for a hearing; the trial court entered an order on April 17, 2014, scheduling a hearing on June 30, *1264 2014, and appointing a guardian ad litem for the three minors. Mary and Larry each filed a “notice/motion to allow coten-ant to purchase outstanding interests,” citing § 35-6-100 et seq., Ala.Code 1975, on June 16, 2014, and June 18, 2014, respectively.
After the hearing on June 30, 2014, the trial court entered an order on July 1, 2014, In its order, the trial court determined that the property could not be equitably divided or partitioned, appointed Mike Lowery to complete an appraisal of the property, and ordered Lowery to submit the appraisal report to the trial court within 30 days. The trial court’s order further stated
“[t]hat a proper notice & motion has been filed with the court pursuant to 35-6-100 et seq. of the Code of Alabama to request an appraisal of the property and offering to purchase the subject property at the appraised value.”
The trial court also entered an order permitting an entry of default against the cotenants who had failed to respond to the complaint.
Lowery submitted the appraisal report, valuing the property at $7,000, to the trial court on July 21, 2014. On July 28, 2014, Larry filed a motion seeking to introduce evidence indicating that the property could be physically divided and, in the alternative, seeking permission to file an interlocutory appeal of the trial court’s order determining that the property could not be equitably divided or partitioned. The trial court denied Larry’s motion on August 1, 2014. The record indicates that Taurus deposited $7,000 into the trial court on August 11, 2014, that the trial court entered an order on December 3, 2014, confirming that the appraisal had been filed and that Taurus had paid the $7,000 appraisal amount, and that Mary and Larry each deposited $388.89, or 1/18 of the total value of the property, on or about December 29, 2014. After a hearing on April 29, 2015, the trial court entered a judgment on May 12, 2015, finding that Taurus was the only party that had timely deposited the full amount of the appraised value of the property pursuant to § 35-6-102, Ala.Code 1975, and ordering, in pertinent part, that the property was to be conveyed to Taurus, that Lowery, the guardian ad litem, and the attorney representing Taurus would be paid from the proceeds of the sale, and that the remaining proceeds would be divided among the cotenants according to their respective ownership interests in the property.
Larry filed a notice of appeal to this court on June 15, 2015, seeking our review of whether the trial court had erred by determining that the property could not be partitioned, whether the trial court had misapplied § 35-6-100, Ala.Code 1975, whether he had been deprived of due process, and whether the trial court had erred by applying the common-fund theory.
“Because the trial court heard ore tenus evidence during the bench trial, the ore tenus standard of review applies. Our ore tenus standard of review is well settled. ‘ “When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.” ’ Smith v. Muchia, 854 So.2d 85, 92 (Ala.2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)).”
Kennedy v. Boles Inv., Inc., 53 So.3d 60, 67-68 (Ala.2010).
Section 35-6-100 may be invoked only in an action for a sale for division; therefore, we first address Larry’s argument that the trial court erred by determining that the property could not be *1265 partitioned. It was undisputed that the property consists of approximately 1 acre, that a house is situated on the property, and that there are 13 cotenants whose ownership interests in the property range from 1/6 to 1/108. In English v. Brantley, 361 So.2d 549, 552 (Ala.1978), our supreme court explained:
“Although there is little evidence in the record concerning this issue, the fact there.are 57 named defendants with interests varying from 1/6 to 1/396 in only 140. acres suggests that any partition in kind would be virtually impossible and therefore inequitable. Carden v. Vanderslice, 336 So.2d 1082 (Ala.1976). Additionally the record indicates the land varies in its use and quality. Part is timbered, part is under cultivation, and part has buildings on it.”
(Footnote omitted.) The trial court’s conclusion that the property in the present case, which is only 1 acre, could not be equitably divided among 13 cotenants with varying interests is in accordance with the guidance provided in English. Furthermore, because “[a] trial court’s finding that land cannot be equitably partitioned is entitled to a presumption of correctness and will be overturned only if plainly or palpably erroneous,” we find no error in the trial court’s determination that the property cannot be equitably partitioned. Black v. Stimpson, 602 So.2d 368, 370 (Ala.1992) (citing Moore v. McNider, 551 So.2d 1028 (Ala.1989); Irons v. Le Sueur, 487 So.2d 1352 (Ala.1986); Ragland v. Walker, 411 So.2d 106 (Ala.1982); English v. Brantley, supra; Elliott v. Burch, 293 Ala. 244, 301 So.2d 557 (1974); and Meador v. Meador, 255 Ala. 688, 53 So.2d 546 (1951)).
' We next address the argument that the trial court failed to comply with § 35-6-100, which provides, in its entirety:
“Upon the filing of any petition for a sale for division of any property, real or personal, held by joint owners or tenants in common, the court shall provide for the purchase of the interests of the joint owners or tenants in common filing for the petition or any others named therein who agree to the sale by the other joint owners or tenants in common or any one of them. Provided that the joint owners or tenants in common interested in purchasing such interests shall notify the court of same not later than 10 days prior to the date set for trial of the case and shall be allowed to purchase whether default has been entered against them or not.”
Our supreme court explained in Prince v. Hunter, 388 So.2d 546, 547 (Ala.1980), that
“[t]he statute ostensibly was drafted to protect joint owners from being divested of their property in a forced sale by allowing them the option to purchase the filing joint owner’s interest. The operative words are ‘the court shall provide for the purchase [of the petitioner’s interest] by the other joint owners.... ’ (Emphasis added.) Ragland v. Walker, 387 So.2d 184 (Ala.1980). The statute in using the word ‘shall’ makes it mandatory, upon the filing of a petition for sale for division, that the court provide for the purchase of the petitioner’s interest by the other joint owners if they notify the court of their interest in purchasing petitioner’s interest at least ten days before the day set for trial.”
As noted above, Mary and Larry filed their motions pursuant to § 35-6-100 on June 16, 2014, and June 18, 2014, respectively. The trial court did not hold a hearing on Taurus’s petition until June 30, 2014; thus, both Mary and Larry had notified the trial court at least 10 days prior to the date set for the hearing of their inter *1266 est in purchasing Taurus’s interest in the property.
We note that, in Ragland v. Walker, 387 So.2d 184, 185 (Ala.1980), our supreme court stated that, although § 35-6-100 may be “inartfully drafted, the purpose of its provisions is readily discernible. The prior statutory scheme, as judicially interpreted (exemplified by English v. Brantley, 361 So.2d 549 (Ala.1978)), hampered the efforts of nonconsenting interest holders, in partition proceedings under § 35-6-20, to preserve estates.”[2] In an attempt to clarify the requirements of the statutory scheme of which § 35-6-100 is a part, our supreme court offered the following hypothetical example and application of that statutory scheme in Kittrell v. Benjamin, 396 So.2d 93, 96-97 (Ala.1981):
“A, B, C and D are joint owners or tenants in common (each owning an undivided 1/4 interest), of a tract of land containing 160 acres. A, proceeding under § 35-6-20, [Ala.Code 1975,] files a petition in which he avers that the 160 acres cannot be partitioned and agrees that it should be sold for division. C, in his answer to the petition, states that the land can be equitably partitioned, but he also notifies the court, not later than ten days prior to the date set for trial of the case, that he wants to purchase the interest of A, the petitioner, and that of B, who agrees to the sale. D files an answer in which he denies that the 160 acres cannot be equitably divided.
“Under these hypothetical facts, A could obtain a partition of the land between him and B, C and D, as a matter of right, but A’s alternative right to have the land sold for division is statutory, and would be conditioned upon A’s averment and proof that the property could not be equitably divided or partitioned among them. Raper v. Belk, 276 Ala. 370, 162 So.2d 465 (1964).
“C, provided he notified the court as required by s 35-6-100, could purchase A’s interest, because A was the petitioner; C also could purchase B’s interest, because B agreed to the sale asked for by A. The fact that C asked to be allowed to purchase the interests of A and B would not waive C’s right to insist on partition. Ragland v. Walker, [387 So.2d 184 (Ala.1980) ].
“If the trial court determined that the land could not be equitably partitioned, then the court, giving effect to C’s request to purchase under § 35-6-100, would follow the procedure provided for in § 35-6-101, § 35-6-102, and § 35-6-103:
“ ‘§ 35-6-101. Appointment of appraisers; report.
“ ‘In such circumstances as described in section § 35-6-100, and in the event the parties cannot reach agreement as to the price, the value of the interest or interests to be sold shall be determined by one or more competent real estate appraisers or commissioners, as the court shall approve, appointed for such purpose by the court. The appraisers or commissioners appointed under this section shall make their report in writing to the court within 30 days after their *1267 appointment. (Acts 1979, No. 79-334, p. 532, § 2.)
“ ‘§ 35-6-102. Payment of appraised value into court; time period; transfer of title. '
“ ‘After the report of the appraisers or commissioners, the tenants in common or joint owners seeking to purchase the interests of those filing the petition shall have 30 days to pay into the court the price set as the value of those interests to be purchased. Upon such payment and approval of same by the court, the clerk shall execute and deliver or cause to be executed and delivered the proper instruments transferring title to the purchasers. (Acts 1979, No. 79-334, p. 532, § 3.)
“§ 35-6-103. Effect of failure to pay purchase price.
‘“Should the joint owners or tenants in common fail to pay the purchase price as provided in section 35-6-102, the court shall proceed according to its traditional practices in such cases as described in section 35-6-100. (Acts 1979, No. 79-334, p. 532, § 4.)'
“Because the value of a fractional interest in a larger tract, if sold separately, may be of lesser value than if the entire tract was sold, we determine that the words ‘the value of the interest or interests to be sold’ in § 35-6-101 would be determined as follows: The appraisal would be of the entire tract, and the value of the interest to be sold would be determined proportionately, based upon the fractional ratio the interest to be sold bears to the property as a whole. For example, in the hypothetical, if C could not agree with A and B on the price of the interests of A and B, the appraisal would be of the entire tract. A’s undivided one-fourth interest would be one-fourth of that total value. B’s undivided one-fourth interest would be one-fourth of that total value. Assuming C paid A and B for their respective interests as provided by § 35-6-101, then C would own three-fourths of the interest in the tract, and D would own one-fourth. If either C or D, or their successors in interest, subsequently desired to file a partition proceeding, their rights would not be barred under princi-pies of res judicata by reason of the adjudication made in the pending partition proceeding.”
Our supreme court further examined § 35-6-100 in Jolly v. Knopf, 463 So.2d 150, 153 (Ala.1985), in which it determined that “not allowing one co-owner to be as much entitled to purchase as any of the other co-owners, regardless of their alignment as plaintiffs or defendants in an action for sale for division,” rendered the statute unconstitutional. In that case, Jolly filed a complaint seeking a sale for division of property owned by her and six other cotenants. Id. at 151. The coten-ants answered and filed a notice of their intent to purchase Jolly’s interest pursuant to § 35-6-100; Jolly followed with a notice that she wished to purchase the cotenants’ interests, also pursuant to § 35-6-100. Id. The trial court in that case entered a judgment divesting Jolly of her interest and transferring title of the property to the other cotenants in accordance with the statute. Id.
On appeal to our supreme court, Jolly argued that § 35-6-100 denied her equal protection of the law and was, therefore, unconstitutional. Id. at 152. In its discussion of the law, the Jolly court stated that “[t]he legislature may not prejudice or discriminate against a co-tenant of an unpar-tible parcel of land by denying him or her the opportunity to purchase the interests of the other co-tenants merely because he *1268 or she has initiated the proceeding by the filing of a complaint.” Id. at 153. Our supreme court went on to explain that,
“[i]n this case, the defendant co-tenants properly filed a statutory notice of their desire to purchase the plaintiff co-tenant’s interest in the property. The plaintiff co-tenant thereupon gave notice of her desire to purchase the interest of the defendant co-tenants. The trial court transferred to the defendants the plaintiffs interest when the defendants paid into court an amount equal to one-seventh of the total in payment of her share. Plaintiff Jolly responded by offering to purchase the six-sevenths interest of the six defendants at the appraised price. Under these circumstances, we must reverse the trial court’s judgment and remand the cause for further proceedings consistent with this opinion. As we have consistently held, § 35-6-100 is designed to prevent co-tenants from being divested of their ownership rights in real property by a sale for division. The co-tenant defendants here followed the statutory procedure designed for that purpose. The plaintiff co-tenant cannot be denied equal participation in the statutory scheme. She has a right to participate in the statutory ‘private sale.’ ”
Jolly, 463 So.2d at 153-54. Ultimately, our supreme court reversed the trial court’s judgment and remanded the cause for the trial court to “allow each of the seven co-owners of the land a right to purchase the interests of the others at such price as the others are willing to sell and the buyer is willing to pay.” Id. at 154.[3]
Therefore, based upon Jolly, a petitioner in a sale-for-division action may also invoke § 35-6-100 in an effort to purchase the interests of other cotenants. We note that the well-documented purpose of § 35-6-100 is “to protect joint owners from being divested of their property.” Prince, 388 So.2d at 547; see also Ragland, 387 So.2d 184. We further note that § 35-6-100 clearly provides for the purchase of the interests of joint owners who are willing to sell. However, we are also bound to follow the precedent established by our supreme court in Jolly. The facts in Jolly do not suggest that any of the cotenants had indicated a willingness to sell to Jolly. Jolly, 463 So.2d at 151. Nevertheless, our supreme court remanded the cause with instructions to the trial court to consider Jolly’s offer to purchase the interests of the cotenants based on the appraised price in what it referred to as a “private sale.” Id. at 154. Based on Jolly, we conclude that the trial court correctly considered Taurus’s offer to purchase the interests of all the other cotenants, even though Larry and Mary had indicated that neither of them desired to sell.
Having determined that Taurus had a right to purchase the interests of the other cotenants pursuant to § 35-6-100, we next examine whether the remaining requirements promulgated in §§ 35-6-101 through -104 were properly followed. Section 35-6-101 requires that a trial court appoint an appraiser to determine the value of the property; the record confirms that the trial court did so. We next note that § 35-6-102 provides that,
“[a]fter the report of the appraisers or commissioners, the tenants in common *1269 or joint owners seeking to purchase the interests of those filing the petition shall have 30 days to pay into the court the price set as the value of those interests to be purchased. Upon such payment and approval of same by the court, the clerk shall execute and deliver or cause to be executed and delivered the proper instruments transferring title to the purchasers.”
As noted above, the record indicates that Lowery submitted the appraisal to the trial court on July 21, 2014, and that the trial court entered an order on December 3, 2014, confirming that the appraisal had been filed and that the amount of the appraised value of the property had been paid by Taurus. It is undisputed that Larry and Mary did not deposit any amount into the trial court until December 29, 2014, more than 30 days after the appraisal had been submitted. Larry argued at the April 29, 2015, hearing that he had not received notice that the appraisal had been submitted and that he did not become aware of the appraisal until he received the trial court’s December 3, 2014, order. Larry further argued to the trial court, and reasserts in his appellate brief, that he had deposited the amount of Taurus’s interest in the property into the trial court within 30 days of discovering that the appraisal had been submitted. We are aware that Larry appeared before the trial court pro se; however, “it is well settled that ‘the operation of the courts of this state is governed by rules which are no more forgiving to a pro se litigant than to one represented by counsel.’ ” Watchous v. North Creek Baptist Church, 706 So.2d 1259, 1260 (Ala.Civ.App.1997)(quoting Black v. Allen, 587 So.2d 349, 349 (Ala.Civ.App.1991)).
Section 35-6-103 provides that, “[s]hould the joint owners or tenants in common fail to pay the purchase price as provided in Section 35-6-102, the court shall proceed according to its traditional practices in such cases as described in Section 35-6-100.” Because Larry and Mary each failed to deposit the amount representing the value of Taurus’s interest in the property within the required 30-day period, Taurus’s purchase bid was the only valid bid before the trial court. Thus, the trial court properly proceeded to accept Taurus’s bid and to transfer ownership of the property to him. See Lynum v. Lynum, 521 So.2d 6, 7 (Ala.1987).
Larry next argues that the failure to notify him of the submission of the appraisal violated his constitutional right to due process. However, this court has stated that “a party, even when acting pro se, is responsible for keeping track of the status of his case.” Watchous, 706 So.2d at 1260 (citing Bowman v. Pat’s Auto Parts, 504 So.2d 736 (Ala.Civ.App.1987)). To the extent that Larry argues that the trial court failed to comply with § 35-6A-6, Ala.Code 1975, a part of the Alabama Uniform Partition of Heirs Property Act (“the Partition Act”), § 36-6A-1 et seq., Ala.Code 1975, we note that § 35-6A-3(a), Ala.Code 1975, clearly states that the Partition Act “applies to partition actions filed on or after January 1, 2015.” This action was clearly commenced before January 1, 2015.
Lastly, Larry challenges the award of an attorney fee to Taurus’s attorney based upon the common-fund theory. Section 34-3-60, Ala.Code 1975, provides, in pertinent part:
“In all actions and proceedings ... where there is involved the, sale of property for distribution, .,. the court having jurisdiction of such action or proceeding may ascertain a reasonable attorney’s fee, to be paid to the attorneys or solicitors representing ... any party in the action or proceeding....”
*1270 Larry appears to specifically challenge whether the common-fund theory was applicable in this case because, according to him, the defendants did not receive a benefit. However, we further note that this section of Larry's appellate brief is essentially devoid of citation to relevant legal authority, in contravention of Rule 28, Ala. R.App. P.
“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived. Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 923 (Ala.2002); Arrington v. Mathis, 929 So.2d 468, 470 n. 2 (Ala.Civ.App.2005); Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). ‘This is so, because “ ‘it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” ’ Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).”
White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008).
In Carver v. Foster, 928 So.2d 1017, 1023 (Ala.2005), our supreme court noted that the appellant in that case had cited
“no authority for the proposition that, in a sale-for-division case, the fact that a cotenant did not want to sell his interest in property defeats a finding, for purposes of determining whether to award an attorney fee, that there was a common benefit, and we decline to so hold. See also Shirley v. Mazzone, 591 So.2d [469,] 472 [ (Ala.1991) ] (Houston, J., concurring specially) (‘ “The common benefit is in bringing about a division of the lands through a judicial sale, so that each of the joint owners can have and enjoy his own.” ’ (quoting Dent v. Foy, 214 Ala. 243, 248, 107 So. 210, 215 (1925))).”
Thus, we conclude that the trial court did not err by awarding Taurus an attorney fee.
Based upon the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. It is not clear from the record what "conditions” Ethel was referring to in her letter. Ethel testified at the trial that she wanted to sell her share of the property; however, she did not refer to any conditions of the sale.

. Section 35-6-20 provides:
"The circuit court shall have original jurisdiction to divide or partition, or sell for partition, any property, real or personal, held by joint owners or tenants in common; whether the defendant denies the title of plaintiff or sets up adverse possession or not; and the court in exercising its jurisdiction shall proceed according to the Alabama Rules of Civil Procedure and, where necessary, allow service of process by publication as prescribed therein.”

. We note that the special concurrence authored by Chief Justice Torbert, see Jolly, 463 So.2d at 154, states that, “in order to make the application of [§ 35-6-100] constitutional,” the supreme court, in the main opinion in Jolly, had "engraft[ed] a new bidding procedure” into the statute; however, we are unable to ascertain from the main opinion what exactly that bidding procedure entails.